Our first case up this morning is 414-0017, Nord v. Village of Saybrook. For the appellants, Thomas Kelty and Patrick McGrath, are you going to be dividing up your argument? I'll be arguing entirely. Okay. And you are Mr. Kelty? Mr. McGrath. Okay. And for the appellee, Jeffrey Crumby and Chad Ritchie, Laura Ballard, who will be arguing for you folks? I'll be arguing on behalf of Gene Talley. Okay. Mr. Ritchie? Yes. And Judge, I may be arguing on behalf of the Villages of Saybrook and Patrick Lewis. Well, you have 20 minutes, have you divided that up? Yes. Okay. Okay, then Mr. McGrath, you may proceed, sir. Thank you. We're here before the court today on a case arising out of an application for a special use permit, which Mr. Talley made to the Villages of Saybrook. Mr. Talley, at that time, was an employee of the Villages of Saybrook. He asked for a special use permit, which led to some meetings by the Villages of Saybrook and ultimately the adoption of an ordinance, Ordinance No. 1788. My client, Ms. Nord, filed an Open Meetings Act action to contest the legality of a meeting which occurred in the process leading up to the adoption of Ordinance No. 1788 and a statutory action under Section 11-13-15 of the Municipal Code against Mr. Talley. We appeal today from the order of September 23, 2010, which struck Ms. Nord's claim against the Villages of Saybrook in the corresponding order of December 10, 2010, denying the motion to reconsider. We seek to have those orders overturned and the case remanded for further proceedings as between Nord and the Villages of Saybrook on the Open Meetings Act claim. The Open Meetings Act has a statutory requirement that the action be filed within 60 days of the date of the alleged illegal meeting. It was on the basis of that statutory standard that the claim against the Villages of Saybrook was stricken. The court's determination that that standard was not satisfied was in error, as there was an alleged illegal meeting on March 10, 2010, and the claim was filed on April 27, 2010, within the 60-day statutory timeframe. So because the statutory timeframe has been satisfied, I believe the court's orders striking the claim should be overturned. The Villages of Saybrook has contended that the Open Meetings Act issue is a red herring to this matter because the alleged Open Meetings Act violation would not affect the validity of Ordinance No. 1788. And while I would concede that point is correct, it nonetheless has no bearing on the ability of my client to pursue a separate statutory claim for a violation of the Open Meetings Act. The Open Meetings Act gives a right to pursue a claim for a violation of its provisions, regardless of whether the violation has any substantive effect on the legality or validity of an ordinance that was ultimately adopted. As to the March 10, 2010 meeting, given what you just indicated, what do you believe your client's remedy should be? In the instance of a violation of the Open Meetings Act, I believe the statute would provide for both the finding that the Open Meetings Act would be violated, the statute would potentially provide a fine as against the Villages of Saybrook, plus recovery of attorney's fees in favor of my client. And the reason, or I would argue as a policy matter, with the increased emphasis on open and transparent government, it makes sense in the statutory scheme to afford an individual a right to proceed with an Open Meetings Act claim to ensure we are holding our local public bodies to their obligations under that act, regardless of whether their violations pertain to the adoption of an ordinance or the passage of a motion. The statute is to be strictly constructed in favor of open meetings, and the statute by its terms requires all meetings, regardless of whether final action is taken, to be open to the public. Is there precedent that would support your position that if a government body violates the Open Meetings Act and recognizes the violation and immediately corrects it by providing proper from the previous meeting, where a proceeding may take place to obtain the remedies that you just suggested that really aren't remedial, but they're almost punitive in nature? Not to my knowledge, Your Honor. The statutory cause of action afforded to a private individual is a relatively new concept, at least to my awareness, has been since the revisions to the Open Meetings Act and the Information Act, which occurred a few years ago. I'm not aware of any case law since that point which has interpreted this issue. I would, however, tender as a policy argument that recognizing the error and subsequently holding a new meeting does not correct what happened, which was an illegal closed meeting, and similarly, it doesn't correct the fact that my client was denied the opportunity to know about that meeting and be present for that closed meeting. What happened at that closed meeting that's pertinent to this proceeding? It was a meeting between, that particular meeting of March 10, 2010, was a meeting as between the mayor and the newly constructed Zoning Board of Appeals. It was in advance of the Zoning Board of Appeals hearing to consider Mr. Talley's application for a special use permit. When was that hearing held? The hearing was held, the final action was taken, I believe, on April 28, 2010. I don't recall whether that's a date that sticks in my mind. I don't recall whether that was the date of the Village Board's final action or the Zoning Board's recommendation. But I know the meeting of March 10 was before the Zoning Board of Appeals made its final recommendation to the Village Board. As to what occurred at that meeting, because the claim was dismissed relatively early on in our proceedings, we did not go through discovery or depose any of the members of the Board to know exactly what transpired at the meeting. The reason the Zoning Board of Appeals was reconstituted was to deal with this one application. So presumably, and again this is a presumption, the discussion at that meeting would have pertained to the application for special use that brings us here today. Well, in April, the Zoning Board of Appeals held a public hearing, and it was in May that the Village adopted the ordinance in question. I apologize, Your Honor, I must have misstated those dates. So this would be two events after the meeting on March 10 about which you expressed your concern. Correct. There were subsequent meetings after the alleged illegal meeting. So what's the remedy under this sequence of events that you're seeking with regard to the March 10 violation? I don't believe the subsequent meetings would have bearing on the March 10 violation. I believe the March 10 violation stands on its own as actionable pursuant to the provisions of the Open Meetings Act, and the remedy would be a potential of a fine and attorney's fees. Is that what you sought with your complaint? I believe that to be the case, Your Honor, though I can't recall. We had some division of labor at the initial stages of the claim, and I don't recall offhand as to whether that was a part of the prayer for relief. I do know it was alleged there was an Open Meetings Act violation. I do know it was alleged that was an illegal meeting. To the extent it was not included as a part of the prayer for relief, I would contend that since it was alleged to be an Open Meetings Act violation, and since an actionable violation was alleged within a 60-day time frame, that an amendment to the pleading could have cured that issue, and the claim wasn't facially so insufficient in law as to justify being stricken without leave to replete. You sought leave to replete? The motion that I believe was acted on was a Section 2615 motion to strike, so I believe the ordinary course on that motion would be to allow an opportunity to replete the claim to correct any technical pleading errors, and I understood the Court's opinion to be that the claim was deficient as a matter of law because of a failure to satisfy that 60-day provision, and that deficiency as a matter of law could not be corrected because it just simply was not satisfied factually. So there was not an opportunity given to replete. We did file a motion to reconsider, asking the Court to change its mind. I'll ask my question. Did you ask leave to refile an amended complaint? I believe we did, Your Honor. Your Court denied it? I believe that's correct, Your Honor. Was there a proposed amended pleading submitted? We, on several occasions, submitted amended pleadings. I think we ended up with a third amended complaint. In terms of sequence of things as to when the Open Meetings Act claim was stricken and to what proposed claim was on file at that time, I don't recall. What relief did you ask from the trial courts regarding the alleged Open Meetings Violation? The Open Meetings Act violation was initially alleged in the context of the broader issue, which was contesting the validity of the action on behalf of the village of Saybrook. So the validity of the special use permit. So the Open Meetings Act claim was alleged in the context of contesting that the special use was invalid. If the trial court didn't think there was a sufficient nexus between the violation of the Open Meetings Act and subsequent enactment of the ordinance, then did you make clear that you were seeking some remedy beyond just that? I believe, yes, we did, Your Honor, that we indicated we were seeking a remedy for a violation of the Open Meetings Act, which would be the statutory remedy, which we seek leave to go back to the trial court on. And what were the statutory remedies you were seeking? The statutory remedy that we seek would be the fine in order of attorney's fees. I'm looking at the third amended complaint. I don't see relief of that type requested. It's my recollection that the third amended complaint, Your Honor, came after the claim against the Village of Saybrook was stricken. Say again, it's your... It's my recollection that the third amended complaint was filed after the Village of Saybrook was dismissed as a party. So it was in the second amended complaint? Either the second or the first. What I believe to be the sequence of events, and I apologize, I'm working off my best recollection. I believe the sequence of events was we had a claim on file. I believe it was an amended complaint, whether labeled amended complaint or first amended complaint. I believe the Village of Saybrook made a motion to strike that for failure to comply with the 60-day statutory time frame. The court granted that motion. After the motion was granted, we did not file to amend. We filed a motion to reconsider with the court, and that motion to reconsider was denied. So at the time the court dismissed the claim, there was an amended complaint on file. Let me explain one of the things that I'm trying to grapple with. Assuming for the moment that there was a violation of the Open Meetings Act that occurred here, it seems to me it does not necessarily follow that all actions taken by the governmental body, in this case the village, subsequent are rendered suspect or invalid because of an open meetings violation that occurred a month or two or however much earlier. Would you agree with that? I wholeheartedly agree, Your Honor. Okay. So what we're talking about is what's the remedy for an open meetings violation that occurred in March, assuming it did. And I was under the impression that your focus, not unreasonably under the facts of this case, was with regard to the whole zoning ordinance that later came up that your client was most concerned about, and that all of your objections and claims with regard to the Open Meetings Act violation pertain to that. And if I'm the trial judge, and I think, well, let's assume my client has been up against an open meetings act violation, I'm not prepared to conclude that everything the village had done subsequently is thereby rendered suspect or void, then you have no case unless you're seeking, oh, and by the way, judge, for that violation itself, we'd like to get a fine and attorney's fees to have called this to the attention of the village because they shouldn't have done this.  I do, Your Honor. And I would agree, as I've stated, I agree wholeheartedly that the Open Meetings Act violation on March 10, 2010 does not render the special use permit in the ordinance in ballot. I believe there are other substantive reasons which I've addressed in my briefing. If I were filing the complaint today, I would have a one-count Open Meetings Act claim standing on its own and a separate one-count claim under section 11-13-15 joined because they arise out of the same common nucleus. Well, I appreciate your candor, but here's the problem as I see it. As a court of review, I'm extraordinarily troubled if we're going to reverse a trial court based on an argument that never hurts. And the reason we're asking you the questions we're asking you is we have to make sure that this argument you're presenting to us about the standalone Open Meetings violation and it's bad and there should be consequences for it was presented to the trial court and rejected by the trial court on the basis that you've now presented it to us before we could say, you know, the trial judge erred in doing it. And counsel, let me add something to that. In this case, you maintain that you are within the 60-day requirement based on relation back to when you filed your original complaint, correct? Yes, Your Honor. And that all related to this ordinance. I mean, I don't see anywhere in the record where that issue was presented to the trial court as a separate issue. It was, Your Honor, presented in the context of the broader picture of the entire kind of sequence of operative facts. To Your Honor, so because it arose out of that same common sequence, while it may not have been split out separately in its own count through the initial pleadings, I believe there was, from the record, accepting the well-pled facts as true, there was an apparent and by the caption on the pleading, at least in one instance, referencing the Open Meetings Act, there was an apparent intent to pursue that claim that was in front of the court. In relation to this ordinance, because you even say that it was one of the steps that led to this ordinance being passed, this improper ordinance. So isn't that the light in which you presented it at the trial court level? Yes, Your Honor. It was presented as a step along the path, the particular meeting of March 10, 2010, but in reference to the meeting was alleged to be an illegal, non-public meeting. Does your prayer for relief specify the relief you're now seeking here, that you're arguing the trial judge improperly denied? I don't recall offhand the exact wording of the prayer for relief in the amended complaint that was on file at the time. I might be able to help you here with that then. There's a four-count amended complaint. Counts 1, 2, and 4 request a declaratory relief. Count 3 is entitled equitable relief. And in the prayer, it seems to take the form of a request for injunctive relief. But I don't see in the prayer for relief any of the remedies that you suggested here today should be available or that you requested in regards to the alleged violation of the Open Meetings Act. And I believe, Your Honor, and again, I apologize that I don't recall the sequence, but I believe the, I don't recall the sequencing of when the complaint was split to four counts with regard to the dismissal of the village. I do recall at least once, if not more, complaints were titled Open Meetings Act violation or had a reference or caption to that. And so I would indicate that. Well, we understand that. But our concern is that the argument is to attack this zoning ordinance and what the village did with regard to it, which your client found objectionable, and that the Open Meetings Act was cited merely as one additional reason why the zoning ordinance is not valid and should be stricken. That was it. And, Your Honor, I would tender in response to that analysis that I believe the trial court understood an Open Meetings Act claim to be before it, else it wouldn't have arrived at the 60-day statute of limitations. The 60-day statute of limitations pertains to a claim alleging a violation of the Open Meetings Act. Had the trial court felt we didn't assert or allege a violation of the Open Meetings Act, then the 60-day statute of limitations wouldn't have been a consideration. I'm concerned about the remedy requested. You know, you've asserted, if you assert a violation of the Open Meetings Act, what then follows is, and therefore, Judge, and therefore what? Therefore, the zoning ordinance is not valid. Well, that's different from, therefore, we want attorney's fees and you should fine them. And if the latter part doesn't appear in your pleading, I'm not sure that's an issue that was presented to the court. Your Honor, and I would tender to that point, again, I feel the issue was presented to the court, else it wouldn't have arrived at consideration of 60-day limitations period. I'd also reference the liberal allowance of amendments, the liberal opportunity afforded a party to present a factually sufficient, valid, legally sufficient claim before a claim be stricken without leave to re-plead. Well, that goes back to the question that I asked earlier. Surely, a problem of deficient complaint that didn't specify a particular prayer for relief can and should be subject to amendment, and if requested, should be granted leave to amend, to specify. For instance, if the trial court stricken your complaint, and you saw, by the way, here's, we want to file another one, we want to include this prayer for relief that was broader than the first, that should have been granted. But I'm not sure from understanding you that, my understanding of your argument, that that was ever done. To clarify, Your Honor, we, while a, after the court's resolution of section 2615 motion, we didn't file a separate motion for leave to amend, as a part of the disposition of that motion, an opportunity was requested, I believe, to be afforded. The disposition to reconsider is just addressed to the prior pleading before the court, isn't it? I believe so, Your Honor. Go ahead. The, with limited time left, if you'll indulge, I'm going to proceed ahead to the second portion of the claim, which is the 11-13-15 action, as against Mr. Talley. Well, you'll have a chance to address this again in the rebuttal council. Thank you, Your Honor. Okay, Mr. Ritchie, on behalf of the appellee. May it please the court, my name's Chad Ritchie, and I'm the attorney for Gene Talley, defendant in this matter. North contends that Ordinance 1788, passed by the Village of Saber, granting Gene Talley a special use permit, is invalid on a constitutional grounds, because the village exceeded their authority as a non-home rule municipality. Counsel, I don't know exactly where you're headed, but can you start with whether or not this can even be pursued, pursuant to 11-13-15? Right, we, as we've argued in our brief and in our motion for summary judgment, we think that this is beyond, invalidating a statute or ordinance is beyond the scope of 11-13-15. And we've cited, as well as the trial court cited, Greer and 222 East Chestnut for those general propositions. Also, we do think that there's a time bar issue, whether it was an administrative action or a legislative action, as we've been arguing, I think either way, there's a time to challenge that ordinance, because they didn't, if you follow the pleadings, their first original complaint was filed on April 17th, 2010. That was the day before the hearing board actually even had their hearing on the special use. So that, that pleading in and of itself had nothing to do with Ordinance 1788, the special use grant. Then they had another amended pleading. The first amended complaint was still about all of this invalidating 1785, the amendment to their zoning ordinance to reconstitute their zoning board. There really wasn't anything regarding 1788 in that as well. The first time they ever addressed 1788 is in December, December 14th in their second amended complaint, and that was seven months after the board had granted the ordinance. So either it was 35 days according to the administrative law statute or 90 days according to 11-1325, and both of those were gone. So our contention is that they're trying to get a second bite of the apple indirectly by suing Gene Talley as an individual and kind of indirectly wanting to invalidate that ordinance 1788 through this action. We think that's improper. Now the court also indicated that Ms. Nord failed to exhaust administrative remedies. Could you talk about that a little bit? I mean, is this a situation, it seems that the appellant is arguing that there's no longer a requirement to exhaust administrative remedies where, as I seem to understand the case law, that there's a different standard that will be used upon review, but it does not, you know, alleviate the obligation to exhaust administrative remedies. Well, I think no matter what, they needed to challenge 1788 on its own merits, whether it's through an administrative action or whether they just file a complaint within the 90-day period on 1788, which they didn't do. The CBS, Inc. states if this is a legislative action by the village board, you know, it's pretty clear in that case that 90 days is 90 days and it pertains to all actions on ordinances and so forth. And those ordinances are deemed valid if those aren't challenged within 90 days. So I think the attempt to review Ordinance 1788 through this action against Gene Talley seven months after the fact is improper. Mr. Ritchie, nested within Count 1 of the Third Amended Complaint is an allegation that your client constructed a concrete slab and erected pup tents in violation of the ordinance. Now, Judge Foley's order allowing the summary judgment motion indicated that Count 1 was being, that she was going to grant summary judgment as Count 1 for the reasons that she noted. And those reasons pertain to the, more to the challenge of the validity of the ordinance. Is there a viable cause of action still remaining as to Count 1? Did Judge Foley address that allegation in paragraph 5 of Count 1? You are correct. It's not specified in the order itself. She just kind of summarily gives a summary judgment to the whole, the whole, our whole motion. We've, we argued and I presented in a brief that Section 11-1315 requires that, that the mayor of the village of Saybrook is served with this action. So he has to, they have to be put on notice that, hey, we're going after Gene Talley for some pup tents and in a concrete slab violation. Pursuant to 11-1315, they served the village with the original complaint, but that was with, that was an open meeting act complaint and there was nothing about pup tents or nothing about a concrete slab in that complaint. So we would contend that notice was not properly given pursuant to 11-1315 and therefore she cannot enforce those, what I call other violations. But was it argued before Judge Foley? I want to. Those other alleged violations? I mean, we know it's in the pleading, but did anyone argue it in front of the judge? As far as the plaintiff is concerned, was it argued? I believe it, I believe it was, but I can't, I can't recall. There's no transcript? No. There is the, regarding the time bar issue, whether it's administrative law or the statutory legislation, 90 days, the plaintiff mentions the relation back issue. I say, hey, that whole issue is remedied because our third and fourth amended complaints that actually had that remedy or that we're seeking related back to the first and second amended complaint. I don't think that's a valid argument because, number one, the first and second amended complaints or the original and first amended complaint only talk about invalidating ordinance 1785 for that purpose, under the Open Meetings Act. And it did not include 1113.15 against Geno Talley whatsoever. The trial court granted the motion to dismiss under section 2615 the village presented, is that correct? As far as my recollection is concerned, yes. In doing so meant that the court and the village had to accept as true all well pleaded facts and then conclude that there was no cause of action stated. Did the well pleaded facts set forth against the village, establish that the village had violated the Open Meetings Act at March 10? I don't know, your honor. For the well pleaded facts for, that may be something Mr. Crumpy can address. He's the attorney for the village that handled that issue. Well, we were speaking with Mr. McGrath about concerns about the claims, the remedy aspect. But at the same time, there's a policy in the state of Illinois that we're supposed to have open meetings and villages aren't supposed to do what it's alleged the village of Saybrook did in this case. And I'm curious as to why we should permit it. Permit the? Yes. Permit what? The violation? Yeah. If there's a violation, if we were to affirm here, are we essentially saying to the village, well, you know, you can go ahead and disregard the requirements of the Open Meetings Act with impunity. I would probably defer to Mr. Crumpy. Mr. Crumpy, you want to address these concerns? I will try, Judge. Okay. Thank you, Mr. Ritchie, for this opportunity. Go ahead. Thank you, Judge. The sequence of events on the pleadings leading up to where we're at today, I think is important. And my recollection of what happened here is not consistent with counsel for the opponent's recollection, perhaps. The initial complaint alleged violations of the Open Meetings Act and named a bunch of defendants, including the village, the village president, and various other individually named defendants. That complaint was dismissed. And counsel was granted leave to replead. Why was it dismissed the first time? It was dismissed the first time for failure to state a cause of action for violating the Open Meetings Act. There just weren't any allegations that actually the court could point to and say this is a violation of the Open Meetings Act. Insufficient allegations of facts to support the violation? That is correct, under my recollection of what happened. So it was dismissed with leave granted to the plaintiff to replead those allegations and to include enough stuff to? Yes, Judge. That is my understanding. And so an amended complaint was filed, I believe, on July 14, 2010. The village, myself, then moved to dismiss that complaint again. There were additional allegations and the nature of the cause of action kind of changed over time, as your honors have observed by looking at the pleadings. The court dismissed that second complaint again. And again found that there were insufficient allegations to allege a violation of the Open Meetings Act. And there was no relationship between the facts alleged in the amended pleading and the relief that was sought. Well, you heard us asking Mr. McGrath questions about what remedy. And the remedy was addressed to the subsequent zoning ordinance? Yes. There were a couple steps removed from the allegations in the amended pleading. And I believe even after that, although the third and fourth complaints, my clients were not in the case at that time. But at least in the second complaint, there was still a gap between anything that could have even taken on its face as true, say the March 10, 2010, alleged illegal meeting. That was still two or three steps removed from what action the village took. And the complaint itself attached the exhibit of the public notice of the April 28 meeting, doesn't allege that that was a violation of the Open Meetings Act, doesn't allege that that occurred in secret. Everybody was there. Counsel, our appellant was there. Her attorneys were there. Well, the notice is an aspect of the Open Meetings Act. Is it the claim there was no notice of what was going to be discussed? There's a claim, I believe, that there was no notice of what was discussed in March. Right. But no action was taken until the April meeting. And there was no allegation that notice was insufficient there. In fact, their complaint and their appeal... To be more explicit, Mr. Krupke, was there any request, the same question I asked Mr. McGrath, that essentially said the Open Meetings Act was violated in March, and therefore we want a fine to be assessed against the village for doing so and attorney's fees for having raised and spent? I don't believe so, Judge. So I guess in rejecting... Well, complaint has two aspects. One, the complaint setting forth the cause of action, if it does. And secondly, relief requested. It's conceivable, maybe this is such a case, where we have a complaint setting forth the cause of action, namely the Open Meetings Act was violated. And the remedy requested is inappropriate. In which case, the trial court might still dismiss the complaint on that basis. Is that what happened here? I think that could be part of a judge. And at the hearing when the judge dismissed it, the First Amendment complaint, and I believe it was inquired of counsel, do you have anything else to plead that might allow you to file a third complaint? And nothing was offered with respect to my clients. Well, it comes back to the earlier question I asked Mr. Ritchie, and he said there really wouldn't be one for you to answer. It seems that the well-pleaded facts, especially with regard to notice, demonstrate that there was a violation here in March of the village of St. Brook. And under the circumstances, there would be no consequences for the village to have violated the act. Well, Judge, I don't think that's entirely painting the full picture of what happened. Because I think if that's true, a plaintiff would still have to show some kind of nexus or connection between the violation and some damage. Why? And what happened? Why would they? I mean, you can just be a citizen. I have no stake in what happened. I don't want the village to be violating the Open Meetings Act. Stop doing it, and Judge, fight them, and give me attorney fees for having raised this issue and demonstrating they did it. What more do you need than that? That's a good point, Judge. But what happened here was there were subsequent actions taken by the village that, quote unquote, remedied the particular. Well, remedied whatever the particular complaint was named the zoning board. That's a question I asked Mr. McGrath. But about the fact that the village, under this, taking a narrow view, under the record before us, assuming the plaintiff has asserted the violation occurred in March, the village suffered no consequences for having violated the act. There's no fine imposed. There weren't attorney fees imposed. Leave aside the zoning issues later on. That's true, but that wasn't the allegation in the initial complaint. Well, does the Open Meetings Act allow for the remedy that counsel has suggested here during argument? As far as a fine and attorney fees are concerned, I don't know, Judge. But what you're indicating here, that was never requested in certain court. That's correct. It wasn't pled as far as my recollection. So your understanding is essentially the plaintiff is using the Open Meetings Act as a tool or vehicle to attack the zoning ordinance? Absolutely. And that's what happened. Go ahead. I'm sorry. And thank you for responding, Mr. Connolly. Thank you, Judge. You've clarified the village's position. Mr. Ritchie, you may continue with your argument at this point, sir. Thank you, Your Honor. So we were, I was discussing the Relation Back Doctrine. And so this court had, I don't believe that NORD's original complaint and a First Amendment complaint have any, or have sufficiently close relationship, or meet the sufficiently close relationship test standards as this court discussed in Wilson v. Schaffer in 2009 when they discussed, you guys talked about a Relation Back Doctrine regarding a medical malpractice case. The first complaint filed prior to, was filed prior to 1788 even being enacted. So there's no way that possibly could be construed to be valued for that. The original and First Amendment complaint both dealt with the Open Meetings Act and trying to invalidate Ordinance 1785. Those counts were not directly challenging 1788 itself. Challenging Ordinance 1788 through 11, 13, 15 with Gino as the sole defendant was in the second and third complaints and not a amplification of NORD challenging the ordinance of 1785 in the first, original complaint and the first complaint, First Amendment complaint. As a result, I don't think that the second and third amendments are distinct from the original and First Amendment complaint and do not relate back. So I still think that the 90 day statute or the other statute of limitations was not followed. As far as the zoning ordinances are concerned, Gene Talley has no control over how the village interprets its own municipal code. He didn't have anything to do with passing the actual ordinance that they're disputing. So we do think it is improper that Gene Talley is the one that's on the hook for all the attorney fees pursuant to 11, 13, 15. There's also a mandatory attorney fee provision if they are the successful party and that would be a punitive type measure. Who is that statute addressed against? The statute of 11, 13, 15 gives a private right of action of a neighbor to sue another private owner for a violation of an ordinance. So they are saying that because ordinance 1788 is invalid that now he doesn't have permission to build a shed and therefore he's violating the underlying Village of Seabrook zoning code. So we don't think that they can use 11, 13, 15 as a way to take another look at 1788 and determine that it's invalid. But they have alleged a violation of 11, 13, or using 11, 13, 15 to allege a violation in regards to the concrete slab and those tents, right? Right. I mean, this case is ultimately about the ordinance and they put one line in there about pup tents and a concrete slab. And like I said, we don't think that they followed the act in serving the mayor properly and that would be a way to get out of that. It's not a problem that the trial court didn't mention that, but it wasn't argued and it wasn't specified by the trial court in its order granting summary judgment. It was not specified in the trial court's order, Your Honor. Thank you, counsel. Thank you, Your Honor. Mr. McGrath, you may have rebuttal at this time. Thank you, Your Honor. As to the Open Meetings Act account, one issue the court inquired of me previously as to whether a request for leave to replead was made, I'd call the court's attention to the order of September 23, 2010. And the order referenced that plaintiff counsel made an oral motion for leave to replead. It also references in paragraph 3 that there was no alleged actionable violation of the Open Meetings Act for references and oral request to replead and says there's no facts that have been brought forth which would lead the court to believe that further amendment would state a viable cause of action. At the time the court entered that order, there was on file, I checked my records, the amended complaint filed July 14, 2010, which did contain an allegation of an alleged illegal meeting on March 10, 2010. So I would What about the remedy request? While the remedy, there was a specific count on alleging an Open Meetings Act violation, the remedy which I've suggested today which would be appropriate was not requested as a part of that amended complaint. But I believe that's a pleading deficiency which could have been corrected had we been afforded the opportunity to replead. But did you ask, you know, good practice would be, Judge, we want to seek leave for another complaint and here's the, you know, if you grant the judge, here's the new complaint that's going to be before you. If the problem, and it would be better had the court articulated it, if the problem was the court's assessment of the wrong remedy, repeating new facts isn't going to correct the wrong remedy. I don't believe the court's decision was founded on a wrong remedy but rather on a failure to comply with the statute of limitations. To your question, Your Honor, there was not, to my knowledge, an amended complaint physically presented to the court on that day. We requested leave and an opportunity to submit that to the court for its consideration. We're not afforded that opportunity. Switching gears to the complaint as against Mr. Talley, the court expressed concern or inquired of Mr. Ritchie as to whether it would be appropriate for the court to consider this outside of administrative review. And what's important to keep in mind is the procedure that was followed by the village. There are two different means in which a special use application can be acted on by a village. The municipal code lends support to these two distinct procedures. One procedure is for the zoning board to make a final decision. That's the last step in the process. No further action by the village board powers entirely vested in the zoning board. That's not the case here. The zoning board made a recommendation. Final action was taken by the village board. Had final action been taken by the zoning board, had they been empowered to do that, had no action been needed by the village board, then the zoning board is acting in an administrative capacity in adjudicating the matter, which would potentially bring this claim under 11.13.13 in the municipal code. However, because the village board was the one that took final action based on a mere recommendation from the zoning board, the zoning board is instead serving as a legislative committee. And when they serve as a legislative committee, there's no final administrative order that would be subject to administrative review. Rather, the final action is that taken by the village board, which is subject to de novo review as a legislative decision for 11.13.25a of the municipal code. And the legislative changes to that section were designed to avoid the exact result which the court suggested was appropriate, which was that it was an administrative decision subject to administrative review. Wasn't it designed to change the burden placed on the parties, not to change the procedure, but to change the burden? It was derivative, Your Honor, of the decision from the Claren case. And in the Claren case, they found it to be an administrative action. And as a part of a certain level of review, a certain standard that's applied when it's that type of action, correct? That's correct, Your Honor. So because in the Claren case, he found it to be an administrative decision, it was found to be subject to the standard for an administrative decision. So to avoid the result from the Claren case, they have to change the statute so it's no longer an administrative decision. And by doing so, without an administrative decision, we're no longer subject to the confines of the Administrative Review Act. It would change it to a legislative decision and the standard of review that would go with looking at that type of decision. But does it change the fact that you still have to go through the administrative process? The administrative review process, Your Honor, I would tend to only apply to an administrative decision. This is not an administrative decision. This is a legislative act by the board. The adoption of an ordinance is the way in which local governments pass a law. So it's no longer an act of administration. It's a legislative act by the corporate authorities. Counsel, let me ask this question about the Lord's Claims against Talley. Is that essentially premised upon Section 11-13-15? Yes, Your Honor. That would include also the reference to the pup tents and concrete slab? Yes, Your Honor. So in the event the trial court of this court were to conclude that 11-13-15 really is not the vehicle that your client could use, it wouldn't make any difference about the pup tent or the concrete slab allegations, would it? That's correct, Your Honor. I believe those allegations are freestanding and that the court's analysis does not end at the validity of the special use permit. And I believe that's one instance where the trial court erred is the trial court's analysis ended by saying you have to accept the special use is valid. You can't challenge it. But that ignores the other violations which have no, which don't drive any permission from the special use. Thank you, counsel. We'll take this matter into the argument. We'll be in recess for a few moments.